GROHER, COUNTY TREASURER, ET AL. *v.* COLGATE-PALMOLIVE-PEET COMPANY.

[No. 14,025. Filed October 29, 1931. Rehearing denied February 5, 1932. Transfer denied March 31, 1932.]

236

*Evan B. Stotsenburg, John H. Weathers, Sherman Minton* and *James L. Bottorff*, for appellants.

*Wilmer T. Fox* and *Mason Trowbridge*, for appellee.

NEAL, C. J.—The Colgate-Palmolive-Peet Company (appellee herein) sought and was granted an injunction perpetually enjoining George Groher, treasurer of Clark County, and Ottis B. Fifer, auditor of Clark County (appellants herein) from collecting any tax on the assessment of personal property made as of March 1, 1928, in the name of Colgate and Company, in the town of Clarksville, Clark County, Indiana, over and above the sum of $1,869,910, such sum being the assessment made on such personal property by the State Board of Tax Commissioners, and from returning any of the real or personal property assessed in the name of Colgate and Company as delinquent by reason of the non-payment of the first installment of taxes on an excessive and illegal assessment of $1,131,090; from carrying to the 1929 tax duplicate and subsequent tax duplicates the assessment of $1,131,090 and any tax thereon, and that the cloud created on the real estate and personal property of the Colgate-Palmolive-Peet Company by reason of such illegal assessment of $1,131,090 be removed.

The salient facts as found by the court are: That the plaintiff (appellee herein) is a corporation, organized under the laws of the State of Delaware, and, since August 8, 1928, has been duly authorized to do business in this state; that George Groher, since January 1, 1929, has been the duly elected, qualified and acting treasurer of Clark County; that Ottis B. Fifer is now and since January 1, 1928, has been the duly elected, qualified and acting auditor of Clark County; that Col-

gate and Company is a corporation, organized under the laws of the State of New Jersey, and is now and since April 14, 1923, has been duly authorized to do business in Indiana; that Colgate and Company, on March 1, 1928, was the owner of real estate and personal property in the town of Clarksville, Jeffersonville Township, Clark County, Indiana; that, on April 23, 1928, Colgate and Company filed with the assessor of Jeffersonville Township its verified schedule of its personal property in the sum of $1,350,676; that thereafter such assessor adopted the value of the personal property in the sum of $1,350,676, and such sum was returned to the auditor of Clark County; that the county board of review of Clark County, on the first Monday in June, 1928, convened in regular session and remained in session until it adjourned on July 13, 1928; that, during such session, and on July 11, 1928, such county board increased the assessment of the personal property of Colgate and Company from $1,350,676 to $3,001,-000; that, on July 17, 1928, and within five days after the adjournment of said county board of review, Colgate and Company filed in the office of the auditor of Clark County its duly verified notice of appeal from the decision of the county board of review to the State Board of Tax Commissioners; that the auditor thereupon made out a statement, in writing, showing concisely the substance of the complaint made in the appeal of Colgate and Company and the action of the county board of review with respect to such assessment and, on the same day, transmitted the same by mail to the State Board of Tax Commissioners; that, on November 27, 1928, the State Board of Tax Commissioners heard such appeal, and, on December 8, 1928, before the adjournment of the fourth session of the State Board of Tax Commissioners, entered an order reducing the assessment of the personal property of Colgate and Company

from $3,001,000 to $1,869,910; that forthwith the secretary of such state board certified such assessment to Ottis B. Fifer, auditor of Clark County; that Fifer, as such auditor, entered the assessment of the personal property of Colgate and Company on the tax duplicate of the town of Clarksville in the name of Colgate and Company in the sum of $3,001,000, instead of the sum of $1,869,910, as fixed by the State Board of Tax Commissioners; that, to this amount was added $620,995, the assessed valuation of the real estate of Colgate and Company; that the taxes so entered for the year 1928 are in the sum of $116,682.24; that thereafter the county auditor delivered such tax duplicate with the taxes entered as aforesaid to the county treasurer, who threatens to collect such taxes in the sum of $116,628.24 so assessed in the name of Colgate and Company.

The court further found that, on August 8, 1928, Colgate and Company conveyed and transferred to plaintiff (appellee herein), the Colgate-Palmolive-Peet Company, as of June 30, 1928, all its property, real and personal, subject to the assumption and payment by the assignee of all of the just debts and liabilities of Colgate and Company, including its liability for taxes for the year 1928; that plaintiff still owns the real estate so conveyed and a large part of the personal property formerly owned by Colgate and Company and so transferred to the plaintiff (appellee herein), on August 8, 1928; that, before filing this proceeding, plaintiff demanded that the county auditor enter for taxation on the tax duplicate the assessment of the personal property of Colgate and Company in the sum of $1,869,910 as fixed by the State Board of Tax Commissioners; that the county auditor refused so to do; that, on April 25, 1929, and before filing this proceeding, plaintiff (appellee herein) paid to the treasurer of Clark County the sum of $40,103.57, being the first installment of

taxes on the personal property at the valuation of $1,-869,910, plus the valuation of the real estate of $620,-995; that this sum was credited as partial payment of the taxes; that plaintiff stands ready, on or before the first Monday in November, 1929, to pay a like amount on the second installment of such taxes; that the taxes on the sum of $1,131,090 (being the excessive assessment), amounting to $36,421.10, remain on the tax duplicate and are a lien upon plaintiff's (appellee's) title to its real estate in the town of Clarksville; that, unless restrained and enjoined, Groher, as such treasurer, will, after May 6, 1929, return the taxes of $36,-421.10 as delinquent, add a penalty of 10 per cent thereon, as well as a like penalty on the second installment of $40,103.57; that he will cause such taxes and penalty to be shown on the list of delinquents; that, unless restrained and enjoined, Fifer, as such auditor, will certify such list to be correct and Groher, as such treasurer, will proceed to enforce the same as an execution against the property of plaintiff, and will, unless so restrained and enjoined, proceed to levy upon and sell this plaintiff's property for collection thereof.

The court found further that the State Board of Tax Commissioners, at its fourth session in the years 1919, 1920, 1921, 1922, 1923, 1924, 1925, 1926, 1927 and 1928, considered and decided appeals of taxpayers undisposed of at its third session, and that a majority of the appeals taken by taxpayers in such years were considered and decided at the fourth session of such board; that the General Assembly of the State of Indiana, in the years 1921, 1923, 1925, 1927 and 1929 acquiesced in such construction of the Tax Act of 1919. (Acts 1919, ch. 59, p. 198, §14032 *et seq.* Burns 1926.)

The court, upon the above stated facts, rendered its conclusions of law and entered judgment perpetually enjoining George Groher, as treasurer of Clark County,

and Ottis B. Fifer, as auditor of Clark County, "from collecting any tax on the assessment of personal property made as of March 1; 1928, in the name of Colgate and Company, in the town of Clarksville, Clark County, Indiana, over and above the sum of $1,869,910, being the assessment made on said personal property by the State Board of Tax Commissioners, from returning any of the real or personal property assessed in the name of Colgate and Company as delinquent by reason of the non-payment of the first installment of taxes on said excessive and illegal assessment of $1,131,090, from carrying to the 1929 tax duplicate, and subsequent tax duplicates, said assessment of $1,131,090, and any tax thereon, and that the cloud created on the real and personal property of Colgate-Palmolive-Peet Company by reason of said illegal assessment of $1,131,090, and the same is hereby removed."

The question to be here decided is whether or not the action of the State Board of Tax Commissioners in decreasing the assessment of the personal property in question from $3,001,000, as fixed by the county board of review, to $1,869,910, is valid or invalid.

Appellants contend the order of the state board with reference to this appeal is entirely void, for the reason that such appeal to the state board was heard and determined by such board after the adjournment of its third session, at which time, appellants contend, such appeal, under the law, should have been heard and determined.

Appellees contend that the order of the state board is valid, and appellants' action in refusing to abide by the order of such board is illegal and void.

The special finding of facts discloses that, on July 17, 1928, and within five days after the adjournment of the county board of review, appellees filed in the office of the auditor of Clark County its duly verified notice

of appeal from the decision of the county board of review to the State Board of Tax Commissioners; that *thereupon,* the auditor made out a statement in writing showing concisely the substance of the complaint made in the appeal of Colgate and Company· and the action of the county board of review, and *"on the same day* transmitted the same by mail to the State Board of Tax Commissioners." (Our italics.) While there is no showing as to the day the state board received this appeal from the county auditor, in the absence of a showing to the contrary, it will be presumed that the same was received by the state board in the usual course of mail and not later than July 19, 1928. *Continental Nat. Bank* v. *Discount, etc., State Bank* (1927), 199 Ind. 290, 157 N. E. 433.

The powers of the State Board of Tax Commissioners and the jurisdiction and duties of such board at their several sessions are conferred and defined by §171 of the Tax Law of 1919 (Acts 1919 p. 198, ch. 59, §14211 Burns 1926), which provides: (1) That the State Board of Tax Commissioners shall assess railroad corporations, etc., at its first session commencing on the first Monday in April and continuing 50 days; (2) that it shall convene on the first Tuesday after the first Monday in July for a period not exceeding 12 days to rehear assessments and applications for revisions in the assessment of railroad property, etc., as made at the first session; (3) the third session commences on Monday next succeeding the second session and is for the purpose of (a) hearing appeals, (b) reviewing and reassessing all property certified by county auditors as hereinafter provided, and (c) for the purpose of equalizing the assessment of all property, real and personal; and (4) the fourth session convenes on the third Monday of September and lasts until the

Saturday following the first Monday in December for the purpose of (a) reviewing and finally determining the tax levies as certified to the board by county auditors, (b) to fix and determine the changes necessary in tax levies, (c) to review and reassess or assess originally any property, real or personal, or both, in any taxing unit of the state.

The instant case brings into consideration the powers and duties of the state board at its third and fourth sessions. In the case before us, the appeal was filed during the third session of the state board, but the hearing and finding was not had until the fourth session of such board. It is appellants' contention that §171 of the State Tax Law provides that appeals taken by a taxpayer must be heard and determined by such board during its third session; that, since such board did not hear and determine the appeal in the instant case until its fourth session, such action was outside of the board's delegated powers and jurisdiction and is a nullity.

Section 189 of the Tax Act (Acts 1919 p. 198, ch. 59, §14229 Burns 1926), provides that "Any person, partnership, company, association or corporation dissatisfied with the action of the county board of review, . . . shall have the right to appeal from the order or assessment of the county board of review to the state board of tax commissioners . . . upon giving notice of such appeal, within five days after the adjournment of the county board of review, to the county auditor of the county from which said appeal is to be taken. The state board of tax commissioners, if it is dissatisfied with the action of the county board of review upon any original assessment, or with the assessment made by any township or county assessor as passed by the county board of review, shall have the right, at any time before the adjournment of its third

session, to require the county auditor to certify for review and reassessment any assessment or assessments made." This section further provides that "upon receiving notice of such appeal or notice of the state board of tax commissioners requiring the certification for review or reassessment any assessment or assessments, the auditor of such county shall forthwith make out a statement, in writing, showing concisely the substance of the complaint made, if any, and the action of the board thereon, and shall transmit the same by mail to the State Board of Tax Commissioners," etc. Thus it is made clear that there are two manners in which an assessment made by the county board of review might be brought before the state board to be "reviewed" or "reassessed." The one is by an appeal of a taxpayer, and the other is upon the order of the state board, but, in either case, it is necessary that such assessment be certified to the state board by the county auditor, and no distinction is thereafter made between such assessments.

Section 171, *supra,* gives the state board, at its third session, the power of "hearing appeals and for reviewing and reassessing all property certified by county auditors as hereinafter provided," while at its fourth session, it is expressly given the power to "review and reassess or assess originally any property, real or personal or both, in any taxing unit of the state." It is to be noted that the phrases "hearing appeals" and "reviewing and reassessing" are joined by the conjunction "and," thus denoting that "hearing appeals" and "reviewing and reassessing" are considered as one general class of assessments to be brought before the board for review. The word "review" as herein used means a re-examination. Webster's New International Dictionary.

This section explicitly empowers the state board to

"review" assessments at its fourth session as well as at its third session. There are no qualifying words ·or terms used in this delegated power. There is nothing in any of the sections of the State Tax Law which empowers the board, at its third session, to review *only* such assessments as are appealed by the taxpayer. But the contrary affirmatively appears. Section 171, *supra,* provides that the board "shall designate in what manner parties desiring to be heard on appeals from boards of review and how taxpayers whose assessments have been, by order of said board, certified by the county auditor for review and reassessment, may be heard . . . at its third session." This establishes conclusively that assessments brought before the board upon its own order, as well as assessments brought by appeal by the taxpayer himself, may be heard and decided during its third session. At no place in any of the sections of the Tax Act is it pointed out that the power of review at its fourth session shall be any different from its power of review at its third session. The statute empowers the board at its fourth session to *"review and reassess . . . any property,"* without limiting the power in the manner in which appellants contend such power should be limited at the fourth session. (Our italics.) In the absence of this power of review being limited in any preceding or subsequent section or sections, we must give the same effect to the word "review" as used in defining the power of the board at its fourth session as is given the same term when used in defining the powers of the board at its third session. If we do this, it is very evident that the board's power to "review" at its fourth session is broad enough to include assessments ordered certified up by the board as well as appeals taken by taxpayers themselves and undisposed of at the board's third session. For this court to say that the board's power to review at

its fourth session is limited to those assessments ordered certified up by the board would have the effect of reading something into the statute that does not appear in any of the sections of the Tax Law. We are aided in this conclusion by the construction the state board has placed upon the sections of the statute in question. The court found, in its special finding of facts "that the State Board of Tax Commissioners at its fourth session in the years 1919, 1920, 1921, 1922, 1923, 1924, 1925, 1926, 1927 and 1928 considered and decided appeals of taxpayers undisposed of at its third session" and "that the General Assembly of the State of Indiana in the years 1921, 1923, 1925, 1927 and 1929 acquiesced in such construction of the Tax Act of 1919." While it is true that the construction of a statute placed upon it by a department is not conclusive, such construction is entitled to great weight. *Spaulding* v. *Mott* (1906), 167 Ind. 58, 62, 64, 76 N. E. 620, and cases therein cited. The weight to be given departmental construction is increased materially when such construction has been acquiesced in by the Legislature, and it has been held that when departmental construction, given a statute by long continued action and is acquiesced in by the Legislature, that such construction is equal to a positive law. *Logansport Credit Exchange* v. *Sands* (1913), 54 Ind. App. 562, 565, 103 N. E. 368.

The taxpayer has a clear right to appeal his assessment to the State Board of Tax Commissioners and when he has done all the law requires of him to ██ do, he has a right to have a hearing and a determination of his assessment by such board. As was said in *Senour, Treasurer,* v. *Matchett* (1895), 140 Ind. 636, 40 N. E. 122, "it must be presumed that the appellate tribunal (the State Board of Tax Commissioners) as is enjoined upon it by law, will give the appealing party a fair hearing and administer equal justice

to all." Appellee, in the instant case, having done all the statute required of him to do to perfect his appeal and bring his assessment before the state board, was guilty of no laches. If the construction were placed upon the statute in question as contended for by appellant, it would have the effect of depriving appellee of his right of appeal and his right to have a hearing when he has been guilty of no laches. Such a construction would be absurd. The law does not contemplate such absurdities. "It is presumed that the legislature does not intend an absurdity, or that absurd consequences shall flow from its enactments. Such a result will therefore be avoided, if the terms of the act admit of it, by a reasonable construction of the statute." Black, Interpretation of Laws §48, p. 104.

Appellants place great stress on the case of *State Board Tax Comm.* v. *Belt R., etc., Co.* (1921), 191 Ind. 282, 130 N. E. 641. The question in that case was a matter involving the assessment of railroad property, and is not decisive of the question under consideration herein. But appellants insist that that case limits the power of the board to review at its fourth session to assessments ordered certified up by the board, but the language as used in that case does not admit of such construction. The court, in speaking of the board's power to review at the third and fourth sessions, said: "Thus at its third session the board may hear appeals taken by the taxpayers and local officers; and after giving notice required by §183 (Acts 1919, p. 198, 308, *supra*) may, at its fourth session *also* review and reassess property certified up by the county auditors on the order of the state board," etc. (Our italics.) The word "also" as used therein means "in addition to." And having previously spoken in the same sentence of "appeals taken by taxpayers and local officers," the court of necessity meant that the board, at its fourth session,

in addition to hearing appeals taken by taxpayers and local officers may, after giving proper notice, review and reassess property certified up by county auditors on the order of the state board. In other words, the court, in *State Board Tax Comm.* v. *Belt R., etc., Co., supra,* substantially held by the language above quoted that the board, at its fourth session, could review and reassess assessments that were brought before the state board by the taxpayer as well as those brought before the board upon its own order. This case is not in conflict with the holding we have already announced in the instant case.

We find no reversible error.

Judgment affirmed.